FEDERAL ELECTION COMMISSION,
Plaintiff,

v.

COLORADO REPUBLICAN FEDERAL
CAMPAIGN COMMITTEE, et al.,
Defendants.

Civ. A. No. 89 N 1159.

United States District Court,
D. Colorado.

Aug. 30, 1993.

Kenneth E. Kellner, Lawrence M. Noble, David M. FitzGerald, Federal Election Com'n, Washington, DC, for plaintiff.

Jan Witold Baran, Thomas Kirby, Carol A. Laham, Wiley, Rein & Fielding, Washington, DC, for defendants.

## ORDER AND MEMORANDUM OF DECISION

NOTTINGHAM, District Judge.

This case involves alleged violations of the Federal Elections Campaign Act of 1971, as amended, 2 U.S.C.A. §§ 431–456 (West 1985) (the "Act"). Plaintiff Federal Election Commission sued Defendant Colorado Republican Federal Campaign Committee and its treasurer, Douglas L. Jones, claiming that defendants had failed to report a certain payment as an "expenditure," as required by 2 U.S.C.A. § 441a(d)(3). Plaintiff seeks declaratory, civil, and injunctive relief under the Act. The matter comes before the court on (1) "Defendants' Motion for Summary Judgment" filed May 15, 1990, and (2) "Plaintiff's Motion for Summary Judgment" filed July 6, 1990. Jurisdiction is based on 28 U.S.C.A. § 1345 (West 1976).

## FACTS

Defendant Colorado Republican Federal Campaign Committee (the "Committee") is an unincorporated political association. It works to advance the goals and values of the Republican Party in the State of Colorado. (Defs.' Statement of Undisputed Facts and Supp. Exs. ¶ 1 [filed May 15, 1990] [hereinafter "Defs.' Statement"], *admitted at* Pl.Fed.Election Comm'n's Resp. to Defs.' Statement of Undisputed Facts and Supp. Exs. ¶ 1 [filed July 6, 1990] [hereinafter "Pl.'s Resp. to Defs.' Statement"].) It is the federally-registered committee for the Republican Party in Colorado and is therefore (as it acknowledges) subject to the Act.

Section 441a(d)(3) of the Act limits the amount which such a committee may expend "in connection with the general election campaign of a candidate for federal office." 2 U.S.C.A. § 441a(d)(3). In 1986, the Committee assigned its yearly right to make expenditures under the Act to the National Republican Senatorial Committee. (Defs.' Statement ¶ 16, Ex. 4 [Defs.' Resp. to Pl.'s Req. for Admis.], *admitted at* Pl.'s Resp. to Defs.' Statement ¶¶ 15–16.) The Committee thereafter paid $15,000 for a radio advertisement, entitled "Wirth Facts # 1" [hereinafter "the Advertisement"], the text of which follows:

> Paid for by the Colorado Republican State Central Committee
>
> Here in Colorado we're used to politicians who let you know where they stand, and I thought we could count on Tim Wirth to do the same. But the last few weeks have been a real eye-opener. I just saw some ads where Tim Wirth said he's for a strong defense and a balanced budget. But according to his record, Tim Wirth voted against every new weapon system in the last five years. And he voted against the balanced budget amendment.
>
> Tim Wirth has a right to run for the Senate, but he doesn't have a right to change the facts.

(Defs.' Statement ¶ 7, *admitted at* Pl.'s Resp. to Defs.' Statement ¶¶ 4–7.)

The Committee devised "Wirth Facts # 1" as a response to a series of television advertisements featuring then-Congressman Wirth. These advertisements were sponsored by the Committee for Tim Wirth, Inc. (Pl.Fed.Election Comm'n's Mem. of P. & A. in Supp. of Pl.'s Mot. for Summ.J. and in Opp'n to Defs.' Summ.J.Mot. at 6 [filed July 6, 1990] [hereinafter "Pl.'s Mot."].) The Advertisement ran between April 4 and 13, 1986, four months before the August Democratic primary and seven months before the November general election. (Defs.' Statement ¶¶ 4–6, *admitted at* Pl.'s Resp. to Defs.' Statement ¶¶ 4–7.)

The Committee is required by section 434(b)(4)(H)(iv) to make quarterly or monthly reports which must contain any section 441a(d)(3) expenditures. *See* 2 U.S.C.A. § 434(a)(4)(A)(i). In the Committee's quarterly report, it listed the $15,000 paid for the Advertisement as an operating expense—not as a section 441a(d)(3) expenditure—and identified it as "voter information to Colorado voters—advertising." (Defs.' Statement, Ex. 12 at 3 [Defs.' Br. for Fed.Election Comm'n Proceedings].) On June 12, 1986, the Colorado Democratic Party filed an administrative complaint with the Federal Election Commission ("Commission"), alleging, inter alia, that defendants' expenditure for the Advertisement violated the Act. On January 10, 1989, the Commission determined there was probable cause to believe defendants had violated sections 434(b)(4)(H)(iv), 434(b)(6)(B)(iv), and 441a(f) of the Act. When settlement negotiations failed, the Commission instituted this civil action.

The parties filed cross-motions for summary judgment on plaintiff's claim that defendants failed to comply with the Act. Defendants maintain section 441a(d)(3) does not apply to the money paid for the Advertisement because it was not an expenditure "in connection with" the general election of a candidate for federal office. (Defs.' Mem. in Supp. of Defs.' Mot. for Summ.J. at 6–7 [filed May 15, 1990] [hereinafter "Defs.' Mot."].) Defendants also assert a counterclaim alleging that section 441a(d)(3) is unconstitutional. No material facts are in dispute. Because I find that plaintiff has failed to demonstrate the Advertisement was "in connection with" the general election of a candidate for federal office, I grant defendants' motion for summary judgment and deny plaintiff's motion. I therefore need not, and do not, reach defendants' challenge to section 441a(d)(3)'s constitutionality.

## ANALYSIS

 Pursuant to rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted where there is "no genuine issue as to any material fact and the . . . moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The burden of establishing the nonexistence of a genuine issue of material fact is on the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 321, 106 S.Ct.

2548, 2552, 91 L.Ed.2d 265 (1986). In a case where a party moves for summary judgment on an issue on which he would not bear the burden of persuasion at trial, his initial burden of production may be satisfied by showing the court that there is an absence of evidence in the record to support the nonmoving party's case. *Id.,* 477 U.S. at 321, 106 S.Ct. at 2552. Once the moving party has met this initial burden of production, the burden shifts to the nonmoving party to establish that there is a triable issue of fact. A triable issue of material fact exists only where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Merrick v. Northern Natural Gas Co.,* 911 F.2d 426, 429 (10th Cir.1990). If the nonmoving party cannot muster sufficient evidence to make out a triable issue of fact on his claim, a trial would be useless and the moving party is entitled to summary judgment as a matter of law. *Anderson,* 477 U.S. at 250, 106 S.Ct. 2511.

Section 441(d)(3) of the Act is at the center of this dispute. It provides:

The national committee of a political party, or a State committee of a political party, including any subordinate committee of a State committee, may not make any expenditure *in connection with the general election campaign of a candidate for Federal office* in a State who is affiliated with such party which exceeds—

(A) in the case of a candidate for election to the office of Senator ..., the greater of—

(i) 2 cents multiplied by the voting age population of the State ...; or

(ii) $20,000....

2 U.S.C.A. § 441a(d)(3) (emphasis added). Because the Committee assigned the full amount of expenditures permitted by section 441a(d)(3) to the National Republican Senatorial Committee, *see Federal Election Comm'n v. Democratic Senatorial Campaign Comm.,* 454 U.S. 27, 39–40, 102 S.Ct. 38, 46, 70 L.Ed.2d 23 (1981) [hereinafter *DSCC*], it

no longer had the right to make section 441a(d)(3) expenditures. As a consequence, the Committee's expenditure of $15,000 for the Advertisement, if made "in connection with" the general election campaign, was a violation of the spending limits established by section 441a(d)(3).

Two types of expenditures are regulated under the Act: coordinated and independent. A coordinated expenditure is one made in cooperation with, or with the consent of, a candidate, his agents, or an authorized committee of a candidate. *Buckley v. Valeo,* 424 U.S. 1, 47 n. 53, 96 S.Ct. 612, 647 n. 53, 46 L.Ed.2d 659 (1976). An independent expenditure is one made without the knowledge or permission of a candidate, his agent, or his campaign committee. *Id. See* 2 U.S.C.A. § 431(17). Coordinated expenditures are considered "contributions" under section 441a(a)(7)(B)(i); as such, they may be more freely limited than independent expenditures. *Buckley,* 424 U.S. at 48, 96 S.Ct. at 647–48; *Federal Election Comm'n v. National Conservative Political Action Comm.,* 470 U.S. 480, 491, 105 S.Ct. 1459, 1466, 84 L.Ed.2d 455 (1985) [hereinafter *NCPAC*]. In *Buckley,* the Court upheld as constitutional the limitations on contributions to candidates and struck down as unconstitutional limitations on independent expenditures. *NCPAC,* 470 U.S. at 491, 105 S.Ct. at 1465. *See also Federal Election Comm'n v. Massachusetts Citizens for Life, Inc.,* 479 U.S. 238, 260, 107 S.Ct. 616, 630, 93 L.Ed.2d 539 (1986) [hereinafter *MCFL*] ("We have consistently held that restrictions on contributions require less compelling justification than restrictions on independent spending."); *California Medical Ass'n v. Federal Election Comm'n,* 453 U.S. 182, 194, 196–97, 101 S.Ct. 2712, 2720, 2724–25, 69 L.Ed.2d 567 (1981) (same).

Expenditures by party committees are considered to be coordinated expenditures subject to the monetary limits of section 441a(d). *DSCC,* 454 U.S. at 27 n. 1, 102 S.Ct. at 40 n. 1.[1] Party committees have

---

1. Defendants point to a passage in *Buckley* which classifies 2 U.S.C.A. § 608(f) (West 1970) (recodified as section 441a[d]) as an "expenditure ceiling," as opposed to a contribution limitation. According to defendants, this reference suggests the Court considered section 441a(d) to regulate independent expenditures. It is unclear how referring to section 441a(d) as an "expenditure" limitation necessarily suggests the section regulates *independent* expenditures. In light of the

been deemed incapable of making independent expenditures in connection with the campaigns of their party's candidates. *DSCC*, 454 U.S. at 27 n. 1, 102 S.Ct. at 40 n. 1. *See also* FEC Advisory Opinion 1985–14, 1 Fed. Election Campaign Fin. Guide (CCH) ¶ 5819 (July 18, 1985); FEC Advisory Opinion 1984–15, 1 Fed. Election Campaign Fin. Guide (CCH) ¶ 5766 (Aug. 16, 1984).

■■■■ The Commission has the "primary and substantial responsibility for administering and enforcing the Act," and has "extensive rulemaking and adjudicative powers." *Buckley*, 424 U.S. at 109–10, 96 S.Ct. at 677–78. When interpreting the Act, the Commission's interpretation is presumptively entitled to deference. *DSCC*, 454 U.S. at 38, 102 S.Ct. at 45. The Commission has, by regulation, forbidden independent expenditures by national and state party committees. *See* 11 C.F.R. § 110.7(B)(4) (1981).

■■■■ Defendants suggest that because no Republican candidate had been nominated, the expenditure was necessarily "independent," not "coordinated." However, for purposes of determining whether an expenditure is coordinated or independent, it is irrelevant whether a candidate has been nominated at the time the expenditure is made. *See* FEC Advisory Opinion 1984–15, 1 Fed.Election Campaign Fin.Guide (CCH) ¶ 5766 (Aug. 16, 1984). "[N]othing in the Act, its legislative history, Commission regulations, or court decisions indicates that coordinated party expenditures must be restricted to the time period between nomination and the general election." *Id.* Organizations whose major purpose is the nomination or election of a candidate "are, by definition, campaign related," *Buckley*, 424 U.S. at 80, 96 S.Ct. at 663, regardless of whether a specific candidate has been nominated. Based on Supreme Court precedent and the Commission's interpretation of the statute, I find that the Committee's expenditure was coordinated. It was made on behalf of the Republican candidate, whomever that might be; and it is irrelevant that no particular person had been designated.

Court and Commission's other pronouncements, and the fact that this reference is dicta, *see Buckley*, 424 U.S. at 58 n. 66–67, 96 S.Ct. at 653 n.

■■ ▌ The Committee's expenditure would nevertheless not be subject to section 441a(d)(3) limitations unless the expenditure was made "in connection with" the general election campaign of a candidate for federal office. No controlling or persuasive authority has interpreted the phrase "in connection with" in the context of section 441a(d)(3). The Court, however, has interpreted the phrase "in connection with" in the context of section 441b, which, like section 441a(d)(3), regulates contributions and expenditures. In *MCFL*, the Court held that "an expenditure must constitute 'express advocacy' in order to be subject to the prohibition of § 441b." *MCFL*, 479 U.S. at 249, 107 S.Ct. at 623. *See also Buckley*, 424 U.S. at 80, 96 S.Ct. at 663. "The normal rule of statutory construction assumes that identical words used in different parts of the same act are intended to have the same meaning." *See Sullivan v. Stroop*, 496 U.S. 478, 484, 110 S.Ct. 2499, 2504, 110 L.Ed.2d 438 (1990); *Sorenson v. Secretary of Treasury of the United States*, 475 U.S. 851, 860, 106 S.Ct. 1600, 1606, 89 L.Ed.2d 855 (1986); *Barnson v. United States*, 816 F.2d 549 (10th Cir.), *cert. denied*, 484 U.S. 896, 108 S.Ct. 229, 98 L.Ed.2d 188 (1987) (when the same words are used in different sections of the same law, they will be given the same meaning).

This rule of statutory construction is usually followed where different parts of the same act have a similar purpose, as do sections 441a(d)(3) and 441b. Both sections 441a(d)(3) and 441b are intended to regulate contributions and expenditures of multi-person organizations. While section 441a(d) regulates expenditures by national committees, state committees, or subordinate committees of the state committees, section 441b regulates expenditures by national banks, corporations, or labor organizations. Since I examine the statute as a whole, I find the Court's interpretation of "in connection with" in the context of section 441b to be persuasive of my interpretation of the same words in section 441a(d)(3).

66–67, I do not find this singular reference persuasive.

Plaintiff urges the court to adopt the Commission's interpretation of "in connection with" which would require the Advertisement to contain a "clearly identified candidate" and an "electioneering message." FEC Advisory Opinion 1985–14, 1 Fed.Election Campaign Fin.Guide (CCH) ¶ 5819 (July 18, 1985). According to plaintiff, section 441b differs significantly from section 441a(d)(3), in that 441b regulates independent expenditures, whereas section 441a(d)(3) regulates coordinated expenditures. Although *Buckley* acknowledges that coordinated expenditures may be more freely regulated than independent expenditures, it does not follow that the identical words, when used with reference to coordinated expenditures, should be given a more expansive interpretation.

The Supreme Court's decision in *Buckley* suggests just the opposite. When examining the intrusiveness of the statute's regulations on first amendment freedoms, the Court found that a limitation on coordinated expenditures was justified in order to stem "the reality or appearance of corruption in the electoral process." *Buckley*, 424 U.S. at 46, 96 S.Ct. at 647–48. Although the Court found the justification for regulating coordinated expenditures outweighed the infringement on the First Amendment, this conclusion does not create a carte blanche for expansive regulation of coordinated expenditures. On the contrary, the fact that section 441a(d)(3) implicates first amendment freedoms argues for adoption of the more narrowly defined "express advocacy" interpretation in order to minimize intrusions.[2] More-

over, as *Buckley* notes, the limitation on contributions by state political committees, "[r]ather than undermining freedom of association, ... enhances the opportunity of bona fide groups to participate in the election process." *Buckley*, 424 U.S. at 33, 96 S.Ct. at 642. Given that the effect of the regulation is to enhance the political freedom of committees, I find that the "express advocacy" standard, which is a less intrusive limitation on a committee's freedom, is consistent with the Act's purpose. I do not find any compelling justification within the Commission's advisory opinion, nor in plaintiff's argument, for expanding *Buckley*'s carefully circumscribed exception to its prohibition against regulation of freedom of speech.

The Commission does not point to any other section of the statute where the courts have given the language "in connection with" the expansive interpretation the Commission advocates in this case. In fact, the courts have consistently interpreted "in connection with" as requiring "express advocacy." *See Federal Election Comm'n v. Furgatch*, 807 F.2d 857, 864 (9th Cir.), *cert. denied*, 484 U.S. 850, 108 S.Ct. 151, 98 L.Ed.2d 106 (1987); *Federal Election Comm'n v. Central Long Island Tax Reform*, 616 F.2d 45, 53 (2nd Cir.1980).[3] In *Orloski v. Federal Election Commission*, 795 F.2d 156 (D.C.Cir.1986), the Commission itself advocated the adoption of the "express advocacy" interpretation of "in connection with" in the context of section 441b(a). In adopting the Commission's interpretation, the D.C. Circuit noted:

**2.** A narrow interpretation of the words "in connection with" also addresses the constitutional concerns raised by defendants. Defendants contend that if all expenditures by state committees were deemed contributions subject to section 441a(d)(3), then they would not be free to speak in favor of their candidates. (Defs.' Mem. in Opp'n to Pl.'s Mot. for Summ.J. and in Reply to Pl.'s Opp'n to Defs.' Mot. for Summ.J. at 4 [filed July 25, 1990] [hereinafter "Defs.' Reply"].) By adopting a more narrowly defined interpretation of "in connection with," state political committees remain free to engage in speech which does not expressly advocate the election of its candidates.

**3.** In *United States v. International Union UAW–CIO*, 352 U.S. 567, 587, 77 S.Ct. 529, 550, 1 L.Ed.2d 563 (1957), the Court interpreted "in connection with" in the context of a predecessor

to the current Act, which prohibited corporate or union contributions or expenditures to be used "in connection with" any election for federal office. *Id.*, 352 U.S. at 568, 77 S.Ct. at 530. The Court held that the "in connection with" found in the statute was understood to proscribe "the expenditure of union dues to pay for commercial broadcasts that are designed to urge the public to elect a certain candidate or party." *Id.*, 352 U.S. at 587, 77 S.Ct. at 550. It is unclear from this language whether the Court was adopting a different interpretation of "in connection with" or merely applying the "express advocacy" standard. Plaintiff does not explain how this language differs materially from the "express advocacy" standard. Since no court has subsequently adopted the language used in *International Union UAW–CIO*, I decline to do so in this case.

[T]he FEC's interpretation is consistent with *Buckley,* in which the Supreme Court held that under the first amendment, the phrases "for the purposes of influencing any election" and "in connection with any election" must be defined as the "express advoca[cy] [of] the election or defeat of a clearly-identifiable candidate," a definition that was subsequently incorporated into the Act. *See* 2 U.S.C. § 431(17). To be sure, the Court limited these definitions to those provisions curtailing or prohibiting independent expenditures. This definition is not constitutionally required for those statutory provisions limiting contributions, *see Buckley,* 424 U.S. at 78–80, 96 S.Ct. at 663–64. Nonetheless the fact that the Court in *Buckley* formulated these definitions for this statutory language demonstrates that the FEC's similar interpretation of the same language is logical, reasonable, and consistent with the overall statutory framework. *The fact that the FEC adopted this interpretation for all relevant statutory provisions, even where not constitutionally required, only adds to its reasonableness for it enhances the consistency and evenhandedness with which the FEC ultimately administers the Act.*

*Orloski,* 795 F.2d at 166–67 (emphasis added). *See also* FEC Advisory Opinion 1978–46, 1 Fed.Election Campaign Fin.Guide (CCH) ¶ 5348 (Oct. 5, 1978) (suggesting that section 441a(d) requires "express advocacy").

 The "thoroughness, validity, and consistency of an agency's reasoning are factors that bear upon the amount of deference to be given an agency's ruling." *DSCC,* 454 U.S. at 35, 102 S.Ct. at 44; *Adamo Wrecking Co. v. United States,* 434 U.S. 275, 287 n. 5, 98 S.Ct. 566, 573 n. 5, 54 L.Ed.2d 538 (1978). I do not find the Commission's suggested interpretation of "in connection with" to be entitled to deference where it is neither thorough nor consistent with either its own previous rulings or the courts' holdings. I conclude that "express advocacy" is required in order for a coordinated expenditure to be "in connection with" the general election campaign of a candidate for federal office under section 441a(d)(3).

 Having made this determination, I must decide whether the Advertisement constituted "express advocacy." The Court has adopted a bright-line test for identifying speech which constitutes "express advocacy," recognizing that:

[T]he distinction between discussion of issues and candidates and advocacy of election or defeat of candidates may often dissolve in practical application. Candidates, especially incumbents, are intimately tied to public issues involving legislative proposals and governmental actions. Not only do candidates campaign on the basis of their positions on various issues, but campaigns themselves generate issues of public interest.

*Buckley,* 424 U.S. at 42, 96 S.Ct. at 645. *See Furgatch,* 807 F.2d at 860; *Federal Election Comm'n v. National Organization for Women,* 713 F.Supp. 428, 432 (D.D.C.1989). The Court defined "express advocacy" as "express words of advocacy of election or defeat, such as 'vote for,' 'elect,' 'support,' 'cast your ballot for,' 'Smith for Congress,' 'vote against,' 'defeat,' or 'reject.'" *Buckley,* 424 U.S. at 46 n. 52, 96 S.Ct. at 647 n. 52. Speech is "advocacy" if it "presents a clear plea for specific action, and ... it must be clear what action is advocated." *Furgatch,* 807 F.2d at 864. Speech which is merely informative would not be considered "advocacy." *Id.* When determining whether speech constitutes "express advocacy," the focus is on the actual wording used. *Buckley,* 424 U.S. at 42, 96 S.Ct. at 646.

The Advertisement does not contain any words which expressly advocate action. At best, as plaintiff suggests, the Advertisement contains an indirect plea for action. The Advertisement concludes with "Tim Wirth has the right to run for the Senate, but he doesn't have the right to change the facts." Even assuming the Advertisement indirectly discourages voters from supporting Wirth, it does not contain the direct plea for specific action required by *Buckley* and *Furgatch.*

According to plaintiff, the surrounding circumstances suggest the Advertisement was, in fact, a plea for action. The Advertisement identified Wirth by name and position, referred to his senate candidacy, responded to

Wirth's own campaign advertisements, and said "paid for by the Colorado Republican State Central Committee." (Pl.'s Mot. at 15.) At the time the Advertisement ran, plaintiff maintains, Wirth was the only credible announced Democratic candidate for Senate. *Id.* In addition, the public "knew" the sponsor of the Advertisement, *i.e.*, the Republican party, would eventually nominate a candidate. Thus, the Advertisement implicitly urged the public both to vote against Wirth and to support whomever the Republican candidate would be. Plaintiff also points to contemporaneous press statements of Howard "Bo" Callaway, then Chairman of the Colorado Republican Party, concerning the state committee's general purpose which allegedly leave "no doubt that the intent of the ad was to attack Mr. Wirth's candidacy for the Senate." (Pl.'s Mot. at 10–11, 17–18.)

I do not believe this type of indirect urging constitutes "express advocacy" under the *Buckley* analysis. *Buckley* adopted a bright-line test that expenditures must "in express terms advocate the election or defeat of a candidate" in order to be subject to limitation. *Faucher v. Federal Election Comm'n*, 928 F.2d 468, 471 (1st Cir.1991). In adopting a bright-line approach, the Court noted the difficulty in interpreting the meaning and effects of words:

> [W]hether words intended and designed to fall short of invitation would miss that mark is a question both of intent and of effect. No speaker, in such circumstances, safely could assume that anything he might say upon the general subject would not be understood by some as an invitation. In short, the supposedly clear-cut distinction between discussion, laudation, general advocacy, and solicitation puts the speaker in these circumstances wholly at the mercy of the varied understanding of his hearers and consequently of whatever inferences may be drawn to his intent and meaning. Such a distinction offers no security for free discussion. In these conditions it blankets with uncertainty whatever may be said. It compels the speaker to hedge and trim.

*Buckley*, 424 U.S. at 43, 96 S.Ct. at 646 (quoting *Thomas v. Collins*, 323 U.S. 516, 535, 65 S.Ct. 315, 325, 89 L.Ed. 430 [1945] ).

In adopting the "express advocacy" standard, the Court sought to protect issue advocacy. "In a republic where the people are sovereign, the ability of the citizenry to make informed choices among candidates for office is essential.... Discussion of public issues and debate on the qualifications of candidates are integral to the operation of the system of government established by our Constitution." *Buckley*, 424 U.S. at 14–15, 96 S.Ct. at 632. Trying to determine whether the surrounding circumstances, coupled with the implications of the Advertisement, constitute "express advocacy" leads to the type of semantic dilemma which the Court sought to avoid by adopting a bright-line rule. I decline to blur *Buckley*'s bright-line rule by interpreting the Advertisement's criticism of Wirth as "express advocacy." Viewing the facts in the light most favorable to plaintiff, I find that the Advertisement does not call for the type of "express advocacy" required by *Buckley*. Because I conclude that no reasonable trier of fact could find for plaintiff on the basis of the evidence presented, defendants are entitled to summary judgment as a matter of law. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

With regard to plaintiff's motion for summary judgment, the analysis of whether the Advertisement constitutes "express advocacy" is the same. Defendants allege that the Advertisement neither contains a direct plea for action, nor conveys support for a particular candidate. According to defendants, the Advertisement simply informed the public about the political record of an incumbent Colorado congressman; it did not advocate voting for or against any political candidate. (Defs.' Mot. at 7.) In addition, the Advertisement was broadcast seven months before the general election—before either party had chosen its candidate. (Defs.' Reply at 10.) Defendants claim Wirth's senate candidacy was referenced in the Advertisement only for the purpose of identifying his statements. (Defs.' Reply at 9.) Plaintiff fails to adequately rebut these claims. Accordingly, plaintiff's motion for summary judgment is denied.

*Conclusion*

Because I find that the expenditure for the Advertisement was not "in connection with"

the general election of a candidate for federal office, it was not subject to section 441a(d)(3) limitations and did not violate the Act. Since I am able to resolve the dispute on statutory grounds, I do not reach defendants' challenge to the constitutionality of section 441a(d)(3). Defendants cannot avoid this result by posturing the constitutional issue as an independent counterclaim. It is therefore

ORDERED as follows:

(1) Plaintiff's motion for summary judgment is DENIED; and

(2) Defendants' motion for summary judgment is GRANTED. All claims against defendants are dismissed. Defendants' counterclaim is DISMISSED as moot.