SULLIVAN, SECRETARY OF HEALTH AND HUMAN
SERVICES *v.* STROOP ET AL.

No. 89–535.   Argued March 26, 1990—Decided June 14, 1990

REHNQUIST, C. J., delivered the opinion of the Court, in which WHITE, O'CONNOR, SCALIA, and KENNEDY, JJ., joined. BLACKMUN, J., filed a dissenting opinion, in which BRENNAN and MARSHALL, JJ., joined, *post*, p. 485. STEVENS, J., filed a dissenting opinion, *post*, p. 496.

*Clifford M. Sloan* argued the cause for petitioner. With him on the brief were *Solicitor General Starr, Assistant Attorney General Gerson, Deputy Solicitor General Merrill,* and *Robert D. Kamenshine. Mary Sue Terry,* Attorney General of Virginia, *R. Claire Guthrie,* Deputy Attorney General, *John A. Rupp,* Senior Assistant Attorney General, and *Thomas J. Czelusta,* Assistant Attorney General, filed a brief for Larry D. Jackson as respondent under this Court's Rule 12.4, in support of petitioner.

*Jamie B. Aliperti* argued the cause for respondents. With her on the brief for respondents Elizabeth Stroop et al. was *Claire E. Curry.*

CHIEF JUSTICE REHNQUIST delivered the opinion of the Court.

In this case we review a determination by petitioner, the Secretary of Health and Human Services, that "child's insurance benefits" paid pursuant to Title II of the Social Security Act, see 49 Stat. 623, as amended, 42 U. S. C § 402(d) (1982 ed. and Supp. V), do not constitute "child support" as that term is used in a provision in Title IV of the Act governing eligibility for Aid to Families With Dependent Children (AFDC). See 42 U. S. C. § 602(a)(8)(A)(vi) (1982 ed., Supp. V). We uphold the Secretary's determination and reverse

the contrary holding of the United States Court of Appeals for the Fourth Circuit.

Title IV requires the applicable agencies of States participating in the AFDC program to consider "other income and resources of any child or relative claiming" AFDC benefits "in determining need" for benefits. § 602(a)(7)(A). The state agencies "shall determine ineligible for aid any family the combined value of whose resources . . . exceeds" the level specified in the Act. § 602(a)(7)(B). Central to this case is one of the amendments to Title IV in the Deficit Reduction Act of 1984 (DEFRA), Pub. L. 98–369, § 2640, 98 Stat. 1145–1146, affecting eligibility for AFDC benefits. This amendment provides:

". . . [W]ith respect to any month, in making the determination under [§ 602(a)(7)], the State agency—

. . . . .

"*shall disregard the first $50 of any child support payments* received in such month with respect to the dependent child or children in any family applying for or receiving aid to families with dependent children (including support payments collected and paid to the family under section 657(b) of this title). . . ." 42 U. S. C. § 602(a)(8)(A)(vi) (1982 ed., Supp. V) (emphasis added).

The Secretary has declined to "disregard" under this provision the first $50 of Title II Social Security child's insurance benefits paid on behalf of children who are members of families applying for AFDC benefits. In the Secretary's view, the Government-funded child's insurance benefits are not "child support" for purposes of § 602(a)(8)(A)(vi) because that term, as used throughout Title IV, "invariably refers to payments from absent parents." Brief for Petitioner 13.

Respondents are custodial parents receiving AFDC benefits who are aggrieved by the implementation of the DEFRA amendments. They sued in the United States District Court for the Eastern District of Virginia challenging petitioner's interpretation of the disregard on statutory and constitu-

tional grounds. See Complaint, App. 31–33. The District Court granted summary judgment for respondents on the basis of their statutory challenge and thereby avoided reaching the constitutional challenge. App. to Pet. for Cert. 22a.

The United States Court of Appeals for the Fourth Circuit affirmed the District Court. *Stroop* v. *Bowen*, 870 F. 2d 969, 975 (1989). According to the Court of Appeals, Congress nowhere explicated its use of the term "child support" in § 602(a)(8)(A)(vi) and the only known discussion of the purpose of the disregard provision is in our decision in *Bowen* v. *Gilliard*, 483 U. S. 587 (1987). As read by the Court of Appeals, *Bowen* noted that "the disregard of the first $50 paid by a father serves to mitigate the burden of the changes wrought by the DEFRA amendments." 870 F. 2d, at 974 (citing 483 U. S., at 594). The court reasoned that although we had not considered the question of Title II child's insurance payments in *Bowen*, the disregarding of the first $50 of such payments, "received in lieu of payments made by a father," would serve the same purpose of mitigating the harshness of the DEFRA amendments. 870 F. 2d, at 974. Since AFDC applicants receiving Title II child's insurance benefits are burdened by the DEFRA amendments no less than applicants receiving payments directly from noncustodial parents, no rational basis exists for according one class of families the mitigating benefit of the disregard while depriving another indistinguishable class of families of the same benefit. The court thus rejected the Secretary's interpretation of the disregard and added that to construe § 602(a)(8)(A)(vi) to exclude the Title II benefits from the disregard would raise constitutional equal protection concerns. *Id.*, at 975. We granted certiorari, 493 U. S. 1018 (1990), to resolve the conflict between the decision of the Fourth Circuit and the contrary holding of the Court of Appeals for the Eighth Circuit in *Todd* v. *Norman*, 840 F. 2d 608 (1988).

We think the Secretary's construction is amply supported by the text of the statute which shows that Congress used

"child support" throughout Title IV of the Social Security Act and its amendments as a term of art referring exclusively to payments from absent parents. This being the case, we need go no further:

> " 'If the statute is clear and unambiguous "that is the end of the matter, for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." . . . In ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole.' " *K mart Corp.* v. *Cartier, Inc.*, 486 U. S. 281, 291–292 (1988) (internal citations omitted).

As an initial matter, the common usage of "child support" refers to legally compulsory payments made by parents. Black's Law Dictionary 217 (5th ed. 1979) defines "child support" as

> "[t]he legal obligation of parents to contribute to the economic maintenance, including education, of their children; enforceable in both civil and criminal contexts. In a dissolution or custody action, money paid by one parent to another toward the expenses of children of the marriage."

Attorneys who have practiced in the area of domestic relations law will immediately recognize this definition. Respondents insist, however, that we have traditionally "turned to authorities of general reference, not to legal dictionaries, to [give] 'ordinary meaning to ordinary words.'" Brief for Respondents 20 (citing *Sullivan* v. *Everhart*, 494 U. S. 83, 91–92 (1990)). But the general reference work upon which respondents principally rely defines "child support" as "money paid for the care of *one's* minor child, *esp[ecially] payments to a divorced spouse or a guardian under a decree of divorce.*" Random House Dictionary of the English Language 358 (2d ed. 1987) (emphasis added) (cited at Brief for Respondents 20). Respondents also seek to bolster their view

with definitions of the word "support" from other dictionaries. *Ibid.* But where a phrase in a statute appears to have become a term of art, as is the case with "child support" in Title IV, any attempt to break down the term into its constituent words is not apt to illuminate its meaning.

Congress' use of "child support" throughout Title IV shows no intent to depart from common usage. As previously noted, the provisions governing eligibility for AFDC benefits, including the "disregard" provision in issue here, are contained in Title IV of the Social Security Act. 42 U. S. C. §§ 601–679a (1982 ed. and Supp. V). Title IV, as its heading discloses, establishes a unified program of grants "For Aid and Services to Needy Families With Children and For Child-Welfare Services" to be implemented through cooperative efforts of the States and the Federal Government. Part D of Title IV is devoted exclusively to "Child Support and Establishment of Paternity." See §§ 651–667. The first provision in Part D authorizes appropriations

> "[f]or the purpose of enforcing the *support obligations owed by absent parents* to their children and the spouse (or former spouse) with whom such children are living, [and] locating *absent parents . . . .*" 42 U. S.C. § 651 (1982 ed., Supp. V) (emphasis added).

The remainder of Part D, 42 U. S. C. §§ 652–667 (1982 ed. and Supp. V), abounds with references to "child support" in the context of compulsory support funds from absent parents. See, *e. g.*, §§ 652(a)(1), 652(a)(7), 652(a)(10)(B), 652(a)(10)(C), 652(b), 653(c)(1), 654, 654(6), 654(19)(A), 654(19)(B), 656(b), 657(a), 659(a), 659(b), 659(d), 661(b)(3), 662(b). Section 653, indeed, creates an absent parent "Locator Service."

The statute also makes plain that Congress meant for the Part D Child Support program to work in tandem with the AFDC program which constitutes Part A of Title IV, §§ 601–615. Section 602(a)(27) requires state plans for AFDC participation to "provide that the State has in effect a

plan approved under part D . . . and operates a child support program in substantial compliance with such plan." Section 602(a)(26) requires State AFDC plans to

> "provide that, as a condition of eligibility for [AFDC benefits], each applicant or recipient will be required—
>
> "(A) to assign the State any rights to support from any other person such applicant may have (i) in his own behalf or in behalf of any other family member for whom the applicant is applying for or receiving aid, . . . [and]
>
> "(B) to cooperate with the State . . . (ii) in obtaining support payments for such applicant and for a child with respect to whom such aid is claimed . . . ."

Part D, in turn, requires state plans implementing Title IV Child Support programs to

> "provide that (A) in any case in which support payments are collected for an individual with respect to whom an assignment under section 602(a)(26) [in Part A] of this title is effective, such payments shall be made to the State for distribution pursuant to section 657 [in Part D] of this title . . . ." § 654(5).

These cross-references illustrate Congress' intent that the AFDC and Child Support programs operate together closely to provide uniform levels of support for children of equal need. That intent leads to the further conclusion that Congress used the term "child support" in § 602(a)(8)(A)(vi), and in Part A generally, in the limited sense given the term by its repeated use in Part D. The substantial relation between the two programs presents a classic case for application of the "normal rule of statutory construction that ' "identical words used in different parts of the same act are intended to have the same meaning." ' " *Sorenson* v. *Secretary of Treasury*, 475 U. S. 851, 860 (1986) (quoting *Helvering* v. *Stockholms Enskilda Bank*, 293 U. S. 84, 87 (1934) (in turn quoting *Atlantic Cleaners & Dyers, Inc.* v. *United States*, 286 U. S. 427, 433 (1932))).

Since the Secretary's interpretation of the § 602(a)(8)(A)(vi) disregard incorporates the definition of "child support" that we find plain on the face of the statute, our statutory inquiry is at an end. The disregard, accordingly, does not admit of the interpretation advanced by respondents and accepted by both courts below. Though Title II child's insurance benefits might be characterized as "support" in the generic sense, they are not the sort of child support payments from absent parents envisioned in the Title IV scheme. The Title II payments are explicitly characterized in § 402(d) as "insurance" benefits and are paid out of the public treasury to all applicants meeting the statutory criteria. Thus no portion of any § 402(d) payments may be disregarded under § 602(a)(8)(A)(vi).

The Court of Appeals construed the statute the way it did in part because it felt the construction we adopt would raise a serious doubt as to its constitutionality. App. to Pet. for Cert. 12a. We do not share that doubt. We agree with the Secretary that Congress' desire to encourage the making of child support payments by absent parents, see, e. g., 42 U. S. C. §§ 602(a)(26)(B)(ii) and 654(5) (1982 ed., Supp. V) (requiring AFDC recipients to assist in the collection of child support payments for distribution by the States under Part D)), affords a rational basis for applying the disregard to payments from absent parents, but not to Title II insurance payments which are funded by the Government. This sort of statutory distinction does not violate the Equal Protection Clause "if any state of facts reasonably may be conceived to justify it." *Bowen* v. *Gilliard*, 483 U. S., at 601.

The judgment of the Court of Appeals is therefore

*Reversed.*

JUSTICE BLACKMUN, with whom JUSTICE BRENNAN and JUSTICE MARSHALL join, dissenting.

Today the Court holds that the plain language of a statute applicable by its terms to "any child support payments" com-

pels the conclusion that the statute does not apply to benefits paid to the dependent child of a disabled, retired, or deceased parent for the express purpose of supporting that child. Because I am persuaded that this crabbed interpretation of the statute is neither compelled by its language nor consistent with its purpose, and arbitrarily deprives certain families of a modest but urgently needed welfare benefit, I dissent.

## I

I begin, as does the majority, with the plain language of the disregard provision. It refers to *"any child support payments* received . . . with respect to the dependent child or children in any family applying for or receiving aid to families with dependent children (*including* support payments collected and paid to the family under section 657(b) of this title)."[1] 42 U. S. C. § 602(a)(8)(A)(vi) (1982 ed., Supp. V) (emphasis added). This language does not support the majority's narrow interpretation. The word "any" generally means all forms or types of the thing mentioned. When coupled with the parenthetical phrase "including . . . ," it indicates that "support payments collected and paid" by the State constitute one type within the larger universe of "child support payments." As the majority recognizes, § 602(a)(26)(A) requires all applicants for AFDC to "assign the State any rights to support from any other person . . . ." Thus, support payments from absent parents will almost always fall within the parenthetical clause referring to "support payments collected and paid" by the State. The plain words of the disregard provision indicate that such payments are only one of various types of child support payments; limiting the meaning of child support to an absent

---

[1] Title 42 U. S. C. § 657(b) (1982 ed., Supp. V) provides that, when a state agency collects child or spousal support payments on behalf of a family receiving Aid to Families With Dependent Children (AFDC), it shall pay to the family the first $50 of each month's payment and retain the rest to reimburse the Government for AFDC benefits.

parent's payments renders the statutory language "any child support payments . . . including . . ." meaningless.

The majority's insistence that the ordinary meaning of the term "child support" excludes Title II payments makes little sense. Title II is a program of mandatory wage deductions, designed to ensure that a worker's dependents will have some income, should the worker retire, die, or become disabled. *Califano* v. *Boles*, 443 U. S. 282, 283 (1979) (Title II "attempts to obviate, through a program of forced savings, the economic dislocations that may otherwise accompany old age, disability, or the death of a breadwinner"). Thus, the worker is *legally compelled* to set aside a portion of his wages in order to earn benefits used *to support his dependent children* in the event he becomes unable to do so himself. A child is entitled to Title II payments only if he or she lived with, or received financial support from, the insured worker—that is, only if the relationship between the child and the insured worker would (or did) give rise to a legally enforceable support obligation. 42 U. S. C. § 402(d) (1982 ed. and Supp. V). The sole and express purpose of Title II children's benefits is to support dependent children. *Jimenez* v. *Weinberger*, 417 U. S. 628, 634 (1974) ("[T]he primary purpose of the . . . Social Security scheme is to provide support for dependents of a disabled wage earner"); *Mathews* v. *Lucas*, 427 U. S. 495, 507 (1976) ("[T]he Secretary explains the design of the statutory scheme . . . as a program to provide for all children of deceased [or disabled] insureds who can demonstrate their 'need' in terms of dependency"); see also *Mathews* v. *De Castro*, 429 U. S. 181, 185–186, and n. 6 (1976). It is unlawful to use Title II payments for any other purpose. 42 U. S. C. § 408(e) (1982 ed.).[2]

---

[2] The overwhelming majority of state courts that have passed on the question have concluded that a parent's court-ordered child support obligations may be fulfilled by Title II payments, recognizing the functional equivalence of the two types of payments. See, *e. g.*, *Stroop* v. *Bowen*,

How are Title II payments different from court-ordered payments by an absent parent? Their source is the same: a parent's wages or assets.[3] Their purpose is the same: to provide for the needs of a dependent child, in lieu of the support of a working parent living in the home. The majority does not even attempt to explain why the common usage and understanding of the term "child support" would include all the types of payments the Secretary says the disregard provision covers — legally compulsory payments from absent parents, voluntary payments,[4] and even spousal support payments[5] — but would exclude Title II payments.

Nonetheless, the majority insists that Title II payments do not constitute "child support." The majority points to the use of the term "child support" in Part D of Title IV to refer to court-ordered support payments by absent parents. This begs the question. Naturally, Congress was referring to compulsory support payments in Part D, because that part of the statute is concerned with "enforcing the support obligations owed by absent parents to their children." 42 U. S. C. § 651 (1982 ed., Supp. V). Other types of child support, such as payments voluntarily made by absent parents, or payments made by the Government on behalf of dead, disabled, or retired parents, do not involve the same problems of en-

---

870 F. 2d 969, 974–975 (CA4 1989) (collecting cases); *Todd* v. *Norman*, 840 F. 2d 608, 614, and n. 4 (CA8 1988) (dissenting opinion).

[3] Although Title II payments are made by a Government agency, not directly by the parent, their ultimate source is the parent's earnings. See *Califano* v. *Boles*, 443 U. S. 282, 283 (1979). Moreover, not all court-ordered support payments are made by the parent; under a mandatory wage-assignment order, child support is deducted automatically from the absent parent's wages (just as Title II deductions are). See 42 U. S. C. § 666(b) (1982 ed., Supp. V).

[4] The Secretary considers voluntary payments by an absent parent to be "child support" within the meaning of the disregard provision. 53 Fed. Reg. 21644 (1988).

[5] See *id.*, at 21642.

forcement.[6] Nowhere in Part D did Congress actually define "child support," nor does Part D or any other provision of Title IV indicate that Congress thought the term "child support" referred *only* to compulsory payments or *only* to payments made directly by the absent parent.

The majority relies on the maxim of statutory construction that identical words in two related statutes, or in different parts of the same statute, are intended to have the same meaning. *Ante*, at 484. Like all such maxims, however, this is merely a general assumption, and is not always valid or applicable. In *Erlenbaugh* v. *United States*, 409 U. S. 239 (1972), for example, the Court declined to follow this maxim, because it was invoked not simply to resolve any ambiguities or doubts in the statutory language, but, as in this case, "to introduce an exception to the coverage of the [statute] where none is now apparent." *Id.*, at 245. The Court commented: "This might be a sensible construction of the two statutes if they were intended to serve the same function, but plainly they were not." *Ibid.* It went on to explain that the two statutes had different purposes, and the reason for the limited scope of one was absent in the context of the other. *Id.*, at 245–247. See also *District of Columbia* v. *Carter*, 409 U. S. 418, 421 (1973) ("At first glance, it might seem logical simply to assume . . . that identical words used in two related statutes were intended to have the same effect. Nevertheless . . . the meaning well may vary to meet the purposes of the law") (internal quotation marks omitted); *Helvering* v. *Stockholms Enskilda Bank*, 293 U. S. 84, 87 (1934) ("[S]ince most words admit of different shades of meaning, susceptible of being expanded or abridged to con-

---

[6] The majority's reliance on the fact that Part D "abounds with references to 'child support' in the context of compulsory support funds from absent parents," *ante*, at 483, to limit the meaning of "child support" in § 602(a)(8)(A)(vi) appears to be inconsistent with the Secretary's own interpretation of the disregard provision as including voluntary as well as court-ordered payments. See n. 4, *supra*.

form to the sense in which they are used, the presumption readily yields [when] the words, though in the same act, are found in . . . dissimilar connections"). This Court's articulation of the limits of the maxim in *Atlantic Cleaners & Dyers, Inc. v. United States*, 286 U. S. 427 (1932), bears repeating, for it remains true today:

> "But the presumption is not rigid and readily yields whenever there is such variation in the connection in which the words are used as reasonably to warrant the conclusion that they were employed in different parts of the act with different intent . . . . [T]he meaning well may vary to meet the purposes of the law, to be arrived at by a consideration of the language in which those purposes are expressed, and of the circumstances under which the language was employed. . . .
>
> "It is not unusual for the same word to be used with different meanings in the same act, and there is no rule of statutory construction which precludes the courts from giving to the word the meaning which the legislature intended it should have in each instance." *Id.,* at 433.

I conclude that the plain language of the statute does not unequivocally support the Secretary's interpretation. It is equally consistent with the opposite conclusion that Title II payments fall within the broad, inclusive phrase "any child support payments." It is therefore proper to turn to the purpose and history of the disregard provision for aid in construing that provision.

## II

The majority, in its conservatively restrictive approach, makes only passing reference to the hardship brought about by the DEFRA amendments. A closer look at the effect of these amendments is necessary to understand the function of the disregard provision. DEFRA changed the AFDC statutes in two ways relevant here. First, it established

the "mandatory filing unit" requirement that a family's application for AFDC benefits must take into account any income received by any member of the family, including all children living in the same household.   42 U. S. C. § 602(a)(38) (1982 ed., Supp. V).   See *Bowen* v. *Gilliard*, 483 U. S. 587, 589 (1987).

Under prior law, parents could choose to exclude from their AFDC applications children who received income from other sources.   This exclusion, in some circumstances, was advantageous to the family; although the family then would not receive AFDC funds for the excluded child, that child's income would not be considered in determining its overall AFDC eligibility.   Thus, in situations where a child's separate income was greater than the incremental amount of AFDC benefits the family would receive for that child, the family was better off not counting the child in its AFDC application.

Along with the new requirement, however, Congress enacted the provision at issue here.   The Court in *Gilliard* explained:

> "Because the 1984 amendments forced families to include in the filing unit children for whom support payments were being received, the practical effect was that many families' total income was reduced.   The burden of the change was mitigated somewhat by a separate amendment providing that the first $50 of child support collected by the State must be remitted to the family and not counted as income for the purpose of determining its benefit level." *Id.*, at 594.[7]

---

[7] The $50 disregard, though it may seem to be a small sum, may be a substantial part of a family's monthly income.   In Virginia, respondents' State of residence, the maximum monthly AFDC payment for a family of three is currently $265.   Brief for Respondents 1–2.   See 45 CFR § 233.20(a)(2) (1989); Virginia Code § 63.1–110 (Supp. 1990).   An additional $50 would be a 19% increase in AFDC benefits.

The legislative history of the DEFRA amendments supports the conclusion that the disregard provision was intended to mitigate the harsh effects of the amendments. The mandatory filing-unit provision was first proposed by the Secretary in 1982, but it was dropped in Conference because of opposition in the House. See H. R. Conf. Rep. No. 97–760, p. 446 (1982). In 1983, the Secretary again proposed this provision, and it was approved by the Senate. S. Rep. No. 98–300, p. 165 (1983). Again, there was opposition in the House, and consideration of the provision was carried over to the next session. House Committee on Ways and Means, Description of the Administration's Fiscal Year 1985 Budget, Comm. Print No. 98–24, pp. 25, 29–30 (1984). In 1984, the provision was added by the Senate amendments to H. R. 4170, the bill that became the Deficit Reduction Act of 1984 (DEFRA). The Report of the House-Senate Conference Committee explains:

"The conference agreement follows the Senate amendment with the following modification: a monthly disregard of $50 of child support received by a family is established." H. R. Conf. Rep. No. 98–861, p. 1407 (1984).

Neither the House bill nor the Senate bill had contained a disregard provision prior to the Conference, nor is there any discussion in the legislative history of such a provision. The only plausible explanation for its sudden appearance is that it was meant to assuage the concerns of some Members of Congress about the harsh impact of the DEFRA amendments and thus to facilitate the passage of the mandatory filing-unit requirement.

The burden of the DEFRA amendments falls equally on families with children receiving Title II benefits and on those with children receiving court-ordered support payments. The mitigating purpose of the disregard provision therefore applies equally to both categories of families. The purpose and history of the disregard provision support the Court of Appeals' interpretation of that provision and resolve any

ambiguity as to the meaning of the statutory words "any child support payments."

Since the Secretary's interpretation of the disregard rule is not compelled by the language of the statute and is not supported by its purpose and legislative history, it is not entitled to deference and should be rejected by this Court. See *NLRB* v. *Food & Commercial Workers*, 484 U. S. 112, 123 (1987) ("On a pure question of statutory construction, our first job is to try to determine congressional intent, using 'traditional tools of statutory construction.' If we can do so, then that interpretation must be given effect, and the regulations at issue must be fully consistent with it"); *Chevron U. S. A. Inc.* v. *Natural Resources Defense Council, Inc.*, 467 U. S. 837, 843, n. 9 (1984) ("The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent . . . . If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect").

## III

Even if the meaning of "child support" in the disregard provision were ambiguous, however, the Secretary's interpretation should still be rejected because it is so arbitrary as not to reflect a "permissible construction of the statute." *Id.*, at 843. The Secretary's position is that the disregard applies to legally compulsory child support payments, voluntary child support payments, and spousal support payments by absent parents, but not to Title II payments. See nn. 4 and 5, *supra*.

Consider, for example, a family consisting of a mother and three children. One of the children is of a prior marriage and receives support from her absent father. The father voluntarily sets aside a portion of his wages every month and sends them to the mother for the child's support. The disregard

provision applies. See n. 4, *supra*. Then the father retires and stops his voluntary contributions, but the child now receives Title II benefits each month. The disregard provision, according to the Secretary, does not apply. But then the mother obtains a court order obligating the father to make child support payments each month, and he does so. The disregard provision applies. Then the father asks the court to amend the support order, so that the Title II benefits are used to satisfy his support obligation. See n. 2, *supra*. The disregard provision, according to the Secretary, does not apply.

Throughout this example, the child's and her family's financial needs remain the same. The impact of the mandatory filing-unit requirement, forcing the family to count the child's income in its AFDC application and thus reducing the level of its benefits, remains the same. The source of the child's income—her father's earnings—and the purpose of that income—to fulfill his duty to provide for the needs of his dependent child—remain the same. But the applicability of the disregard provision changes with the vagaries of the Secretary's regulations.

The Secretary argues that his interpretation of the disregard provision is rational because the disregard serves as an incentive for absent parents to make support payments and for custodial parents to cooperate in enforcement efforts (since $50 of those payments directly benefits the family and does not merely reimburse the State for AFDC). But there is simply no indication that Congress intended to limit the applicability of the disregard provision to situations in which it would serve as an incentive. There is no mention of such a purpose in the legislative history of the provision; moreover, the Secretary points to no discussion of the need for such an incentive anywhere in the legislative history of the DEFRA amendments.[8]

---

[8] The Secretary relies on the legislative history of a 1975 provision which allowed 40% of the first $50 of child support collected by the

Even if the disregard rule were intended to serve as an incentive, that does not justify applying the disregard to all court-ordered support payments, but not to Title II benefits. Not all court-ordered support payments depend on the voluntary compliance of the absent parent; some are deducted directly from the absent parent's wages—just like Title II deductions. See n. 3, *supra*. Also, insofar as the disregard serves as an incentive for the custodial parent to help collect support payments, that purpose applies to Title II benefits as well as to court-ordered support payments. To qualify for Title II benefits, the custodial parent, on behalf of the child, must complete an application and, if necessary, establish paternity. If the disregard does not apply to Title II benefits, so that they serve only to reduce a family's AFDC eligibility, the custodial parent has no financial incentive to apply for them.

Thus, I believe that the Secretary cannot provide any rational explanation for his view that the disregard provision does not apply to Title II payments. Even assuming that the provision is ambiguous and that *Chevron* deference is to

---

state agency to be disregarded in determining the family's income level. 42 U. S. C. § 657(a)(1) (1982 ed.). This provision, by its express terms, however, is applicable only "during the 15 months beginning July 1, 1975." In 1975, the statutory obligation of AFDC applicants to assign support rights and cooperate with enforcement efforts had just been established, see 42 U. S. C. § 602(a)(26) (1982 ed., Supp. V), and Congress apparently believed that a temporary incentive provision would help to ensure compliance with these new requirements. Such a rule, however, was never again proposed or enacted between 1975 and 1984.

By 1984, the assignment and cooperation requirements were long-standing conditions of AFDC eligibility. Custodial parents who failed to assign their support rights and cooperate in enforcement efforts would know that they stood to lose their AFDC benefits. The very different contexts in which the 1974 and 1984 disregard statutes were enacted thus give an additional reason for this Court's usual reluctance to infer the intent of one Congress from the views expressed by another. See *Russello* v. *United States*, 464 U. S. 16, 26 (1983); *Oscar Mayer & Co.* v. *Evans*, 441 U. S. 750, 758 (1979).

be considered, I cannot in good conscience defer to an administrative interpretation that results in an arbitrary and irrational reduction of welfare benefits to certain needy families. I view with regret the Court's acquiescence in an administrative effort to cut the costs of the AFDC program by any means that are available.

I dissent.

JUSTICE STEVENS, dissenting.

Although the answer to the question presented by this case is not quite as clear to me as it is to JUSTICE BLACKMUN, I believe he has the better of the argument. If one puts aside legal terminology and considers ordinary English usage, Social Security benefits paid to the surviving child of a deceased wage earner are reasonably characterized as a form of "child support payments"—indeed, they are quite obviously payments made to support children. Moreover, respondents' interpretation of Title IV of the Social Security Act effectuates congressional intent: If a $50 portion of Social Security payments is disregarded when a family's eligibility for aid is determined, children with equal need will be more likely to receive equal aid. Finally, the interpretation achieves this parity in a way that serves the disregard provision's purpose—fairly inferred from legislative history—of mitigating the hardships imposed by the 1984 amendment that required families applying for aid to count child support payments as available income.

Thus, Title II children's benefit payments are fairly encompassed by both the language and the purpose of the disregard provision. It may be that Congress did not sharply focus on the specific problem presented by this case; the statutory terminology suggests as much. Yet, this fact does not seem to me sufficient reason for refusing to give effect to Congress' more general intent, an intent that is expressed, albeit imperfectly, in the language Congress chose. For these

reasons, and others stated by JUSTICE BLACKMUN in his thorough opinion, I would affirm the judgment of the Court of Appeals.