**SISSETON-WAHPETON SIOUX TRIBE, OF the LAKE TRAVERSE INDIAN RESERVATION, NORTH DAKOTA AND SOUTH DAKOTA, individually and in its parens patriae capacity on behalf of its members; Devils Lake Sioux Tribe of the Devils Lake Sioux (Fort Totten) Indian Reservation, North Dakota, individually and in its parens patriae capacity on behalf of its members; Sisseton–Wahpeton Sioux Council, of the Assiniboine and Sioux Tribes of the Fort Peck Indian Reservation, Montana, individually and in its parens patriae capacity on behalf of its members, Plaintiffs–Appellants,**

**v.**

**UNITED STATES of America; Manual Lujan, Jr., individually and in his capacity as Secretary of the Interior; Nicholas Brady, individually and in his capacity as Secretary of the Treasury, Defendants–Appellees.**

**No. 95–35135.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 6, 1996.

Decided July 15, 1996.

Bertram E. Hirsch, Floral Park, New York, for plaintiffs-appellants.

Tamara N. Rountree, United States Department of Justice, Washington, DC, for defendants-appellees.

Before BROWNING, WRIGHT and T.G. NELSON, Circuit Judges.

PER CURIAM:

### I.

In 1987, three Native–American Sioux Tribes filed this suit contending Congress should not have allocated 25% of an Indian Claims Act judgment fund to nonmember lineal descendants of the aggrieved aboriginal tribe, which had dispersed in the 1860s. The plaintiff Tribes asserted eight claims for relief, including due process, unconstitutional taking, breach of contract, and breach of the 1968 Appropriations Act.

The district court dismissed the case on the ground that all of the claims were barred by the six-year statute of limitations (28 U.S.C. § 2401); we affirmed, with one exception. *Sisseton–Wahpeton Sioux Tribe v. United States,* 895 F.2d 588, 591–92 (9th Cir.1990). Because the Secretary of the Interior did not compile the list of nonmember lineal descendants of the aboriginal tribe until 1987, the plaintiff Tribes did not know the

number of persons who would share in the 25% of the judgment allocated to nonmember lineal descendants, and plaintiffs' due process claim based upon the disproportion between the number of nonmember lineal descendants and the share of the judgment allocated to this group did not accrue until 1987. We noted, however, that "only if the number of lineal descendants were exceptionally small might the Tribes claim that the distribution plan ultimately is irrational." *Id.* at 594.

On remand, the plaintiff Tribes amended their complaint to allege, inter alia, that the statutory distribution plan was irrational because it allocated 25% of the judgment to an "exceptionally small" group. The district court granted summary judgment for the government, and the plaintiff Tribes appeal.

## II.

According to the plaintiff Tribes, only 65 of the 1,969 persons on the Secretary's list have proven they are in fact lineal descendants of the aboriginal tribe. The plaintiff Tribes argue that 65 persons is an "exceptionally small" group.

The plaintiff Tribes reduce the Secretary's list from 1,969 to 65 by applying a strict standard of proof to establish a nonmember is a lineal descendant of the aggrieved aboriginal tribe. They contend nonmembers must identify an ancestor who was a member of the aboriginal tribe in 1862, when the tribe dispersed. The plaintiff Tribes argue that because the aboriginal tribe ceased to exist after 1862, every lineal descendant is necessarily related to an individual who was a member of the aboriginal tribe prior to 1862.

The meaning of "lineal descendant" is not subject to dispute, but the parties disagree as to the proof required to establish lineal descendance from a member of the aboriginal tribe. The Secretary did not require nonmembers to identify an ancestor who was alive in 1862, accepting post–1862 lists as adequate proof of lineal descent.

■ We review the Secretary's interpretation of the Act de novo, *Tang v. Reno*, 77 F.3d 1194, 1196 (9th Cir.1996), and first de-termine "whether Congress has directly spoken to the precise question at issue." *Chevron v. Natural Resources Defense Council*, 467 U.S. 837, 842, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). If "the statute is clear and unambiguous that is the end of the matter." *Sullivan v. Stroop*, 496 U.S. 478, 482, 110 S.Ct. 2499, 2502, 110 L.Ed.2d 438 (1990) (quotations omitted).

■ We agree with the Secretary that the Act unambiguously leaves the standard of proof to the Secretary's discretion, directing the Secretary to prepare a list of persons "whose names or the name of a lineal ancestor appears on *any available records and rolls acceptable to the Secretary.*" 25 U.S.C. §§ 1300d–3(b); 1300d–4(a) (emphasis added). As the government notes, this language does not suggest the applicant must identify an ancestor alive before 1862. In fact, the Act explicitly allows the Secretary to include nonmembers who have not identified an ancestor alive before 1862, as long as the name of the nonmember or of a lineal ancestor is on a list acceptable to the Secretary.

Even if the Act were not clear on its face, we would affirm. The legislative history does not discuss the standard of proof, and the Secretary's decision to adopt an inclusive standard of proof is unquestionably reasonable. Bona fide lineal descendants might have difficulty identifying ancestors alive in 1862, particularly since the aboriginal tribe scattered. The Secretary's standard ensures that more bona fide lineal descendants will be compensated, promoting Congress's goal of compensating all descendants of the aboriginal tribe. *See Aluminum Co. of America v. Central Lincoln Peoples' Utility District*, 467 U.S. 380, 389, 104 S.Ct. 2472, 2478, 81 L.Ed.2d 301 (1984) ("[T]o uphold [an agency's construction of a statute] we need not find that [its] construction is the only reasonable one, or even that it is the result we would have reached had the question arisen in the first instance in judicial proceedings.... We need only conclude that it is a reasonable interpretation of the relevant provisions.").[1]

---

**1.** The plaintiff Tribes have not demonstrated that the Secretary's decision to use post–1862 rolls is

irrational or has led to an arbitrary list. The Secretary concluded that nonmembers were enti-

## III.

■ Although the 1,969 nonmembers will each receive $746, while tribal members will receive an average of $372, the statutory allocation is not irrational and does not violate due process. Congress specifically rejected a proposal to distribute the judgment fund on an equal, per capita basis, choosing instead to allocate lump sum shares to four groups based on the 1909 McLaughlin Annuity roll. When Congress acted, no one knew the precise number of persons in each category. As the plaintiff Tribes themselves argued, the 1909 roll was the most inclusive list:

> The tribes maintain that the 1909 roll, which contains no blood quantum restriction, is the roll nearest in time to the taking of the land from the parent bands, particularly with respect to the ... award based on an 1852 cession, and, *in view of its all-inclusive nature, the single roll best suited to determine the apportionment of the funds.*

H.R. 92–1369 at 10 (emphasis added).

■ The plaintiff Tribes argue the distribution scheme violates equal protection because tribal members and nonmembers receive different shares, and that this claim also remains open because the plaintiff Tribes did not know the nonmembers would receive a higher per capita award until the Secretary compiled the list of nonmembers in 1987. When Congress rejected a per capita distribution and decided instead to distribute the fund in lump sums to the various groups based on the 1909 roll, the possibility of unequal distribution per capita was obvious. If the plaintiff Tribes believed nonmembers and members should receive equal individual shares, they should have challenged the distribution scheme long before they filed this suit. Instead, after public deliberation, the plaintiff Tribes approved the plan to allocate a lump sum to each group based on the 1909

roll. *Sisseton–Wahpeton I,* 895 F.2d at 591–92.

## IV.

■ The plaintiff Tribes argue that because some persons on the Secretary's list might not, in fact, be bona fide lineal descendants, the distribution plan constitutes a taking from the plaintiff Tribes compensable under the Fifth Amendment. We rejected this argument in *Sisseton–Wahpeton I,* noting that the 25% share belongs to bona fide nonmember lineal descendants, not the plaintiff Tribes. The plaintiff Tribes will receive 75% of the judgment fund no matter how many nonmembers are identified. *Sisseton–Wahpeton I,* 895 F.2d at 594.

## V.

■ The plaintiff Tribes allege the district court erred in denying their motion to amend the complaint to add due process and equal protection claims. We "review denial of leave to amend for abuse of discretion, 'but such denial is strictly reviewed in light of the strong policy permitting amendment.'" *Texaco, Inc. v. Ponsoldt,* 939 F.2d 794, 798 (9th Cir.1991) (quoting *Moore v. Kayport Package Express,* 885 F.2d 531, 537 (9th Cir.1989)). However, "[a]bsent a definite and firm conviction that the district court committed clear error of judgment, we will not disturb the district court's decision." *Allen v. City of Beverly Hills,* 911 F.2d 367, 373 (9th Cir. 1990). "The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *Id.* (quoting *Ascon Properties, Inc. v. Mobil Oil Co.,* 866 F.2d 1149, 1160 (9th Cir.1989)).

■ We consider "(1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment, and (5) whether plaintiff has previously amended his complaint." *Id. See also United States v. Pend Oreille*

tled to share in the fund if either they or an ancestor were on any one of the following lists, among others: 1909 Sisseton and Wahpeton Annuity Roll, 1932 Sisseton and Wahpeton Annuity Roll, 1940 Sisseton–Wahpeton Base Roll, 1944 Devils Lake Base Roll, 1960 Assiniboine–Sioux Tribal Roll, 1974 Sisseton–Wahpeton Payment

Roll, 1974 Devils Lake Payment Roll, 1979 Fort Peck Sisseton–Wahpeton Payment Roll. While these lists may contain individuals who were not, in fact, lineal descendants of the aboriginal tribe, the plaintiff Tribes have not shown or even argued that they are so inaccurate that the Secretary's decision to use them was irrational.

*Pub. Util. Dist. No. 1,* 926 F.2d 1502, 1511 (9th Cir.1991).

The fourth and fifth factors, futility and prior amendment, are dispositive in this case. The plaintiff Tribes concede the proposed claim is "similar to the claims [already] asserted in the second amended complaint." It adds nothing to the claims already at issue in this appeal. Because the proposed claim would be redundant and futile, the district court did not err in denying leave to amend. It is time for this litigation to end.

AFFIRMED.