

# IN THE
# TENTH COURT OF APPEALS

## No. 10-22-00150-CV

## IN THE INTEREST OF M.J.C., A CHILD

**From the 170th District Court
McLennan County, Texas
Trial Court No. 2010-1573-4**

## MEMORANDUM  OPINION

S.T. (Mother) appeals from an order in a suit to modify the parent-child relationship, in which the trial court determined the amount of monthly child support to be paid by A.C. (Father).  In three issues, Mother contends that the trial court erred when it awarded Father a child-support credit for the Social Security disability payments received by M.J.C., their child, because of Father's disability.  In a fourth issue, Mother requests that this matter be reversed and remanded to the trial court for the determination of attorney's fees.  We will affirm.

### Background

Mother and Father divorced in 2011.  In the divorce decree, the trial court appointed Mother and Father as joint managing conservators of their child, M.J.C.  Father

was further granted the right to designate the primary residence of the child, and Mother was granted visitation rights under the decree's standard possession order. Mother was also ordered to pay Father child support and to provide health insurance for the child.

Within two years of entry of the decree of divorce, the Texas Attorney General filed a notice as a necessary party in the case. A child support review order was thereafter issued in June 2014 and again in January 2020. In March 2020, Mother then filed a petition to modify the parent-child relationship, requesting that she be granted the right to designate the primary residence of the child. The trial court granted Mother's requested relief in a letter ruling to the parties. The ruling did not set child support, and a subsequent hearing was held on the issue of child support. Evidence from the child-support hearing reflected that Father was disabled and received Social Security disability benefits in the amount of $1,097 per month and Veterans Affairs disability benefits in the amount of $1,311.68 per month. Because of Father's disability, the child also received $460 per month in Social Security payments. The evidence additionally showed that the monthly premium payment for medical insurance for the child was $136.60.

Following the hearing, the trial court signed a final order granting Mother's requested modification and ordering that Mother have the right to designate the primary residence of the child. The trial court further ordered that Father would pay no child support to Mother. The trial court's order explained:

> The specific reasons that the amount of support per month ordered by the Court varies from the amount computed by applying the percentage guidelines of section 154.125 of the Texas Family Code are: The Court finds that the child, M.J.C., receives a monthly benefit from the Social Security Administration based upon [Father]'s disability.

IT IS ORDERED that the child, M.J.C.'s full monthly benefit amount paid by Social Security Administration based upon [Father]'s disability be paid to [Mother] as payee for M.J.C.

The trial court also ordered Father to pay Mother cash medical support, as additional child support, in the amount of $136 per month.

## Issue One

In her first issue, Mother argues that the child's monthly derivative Social Security disability payment should not have been calculated as a child-support credit in Father's favor because such payments are not considered child support under the Social Security Act. *See generally* 42 U.S.C.A. §§ 401–434. Mother relies on *Sullivan v. Stroop*, 496 U.S. 478, 110 S.Ct. 2499, 110 L.Ed.2d 438 (1990), to support her argument. In *Sullivan*, the U.S. Supreme Court concluded that "child insurance benefits" paid under Title II of the Social Security Act did not constitute "child support" as that term was used in a provision in Title IV of the Social Security Act governing eligibility for Aid to Families With Dependent Children (AFDC). *Id.* at 479, 110 S.Ct. at 2501. Title IV of the Social Security Act directed that the first $50 of monthly "child support" was to be disregarded when determining resources and the need for benefits for families applying for or receiving AFDC. *Id.* at 480, 110 S.Ct. at 2501–02. Based on the text of the statute, the *Sullivan* court determined that Congress used "child support" in Title IV of the Social Security Act as a term of art referring exclusively to payments from absent parents. *Id.* at 481–82, 110 S.Ct. at 2502. Title II payments were explicitly characterized as "insurance" benefits and were paid out of the public treasury to applicants meeting the statutory criteria; thus, the

*Sullivan* court concluded that Title II payments were not to be considered "child support" for purposes of disregarding the first $50 of child support in determining eligibility for AFDC under Title IV of the Social Security Act. *Id.* at 485, 110 S.Ct. at 2504.

But *Sullivan* is not applicable here because this case does not involve the application of Title IV of the Social Security Act. Rather, this case involves the application of Title 5 of the Texas Family Code, specifically section 154.132. *See In re R.D.E.*, 627 S.W.3d 798, 803 (Tex. App.—Corpus Christi–Edinburg 2021, pet. denied) (referencing inapplicability of *Sullivan* to Title 5 provisions of Family Code that provide for consideration of disability payments when calculating parent's child support obligation). Section 154.132 of the Family Code provides:

> In applying the child support guidelines for an obligor who has a disability and who is required to pay support for a child who receives periodic benefits as a result of the obligor's disability, the court shall apply the guidelines by determining the amount of child support that would be ordered under the child support guidelines and subtracting from that total the amount of benefits or the value of the benefits paid to or for the child as a result of the obligor's disability.

TEX. FAM. CODE ANN. § 154.132.[1] Because Texas Family Code section 154.132 specifically provides for subtracting the child's derivative disability insurance payments from the amount of child support that would be ordered under the child support guidelines, we therefore conclude that the trial court did not err in doing so with regard to Father.

---

[1] Section 154.132 was amended, effective September 1, 2023, to clarify any ambiguity regarding the proper application of Social Security disability lump-sum payments received by a child based on the obligor's disability. Because this case does not involve a lump-sum payment, the amendment does not affect this case. Accordingly, although the trial court decided this case before September 1, 2023, we cite to the current statute.

Alternatively, Mother also contends in her first issue that even if Father was entitled to a child-support credit, the trial court should still have ordered that he pay $21.82 in child support, which Mother calculates as the guideline child support of $481.82 less the child-support credit of $460. However, after the award of the child-support credit to Father, the trial court did order Father to pay $136 cash medical support. The order of cash medical support resulted in a reduction of Father's net resources to $2,272. *See* TEX. FAM. CODE ANN. § 154.062(d)(5). Then, a recalculation of guideline child support based on Father's reduced net resources results in $454 monthly guideline child support that would be offset in full by the $460 child-support credit awarded to Father. We again conclude the trial court did not err in ordering that Father would pay no monthly child support to Mother.

We overrule Mother's first issue.

### Issues Two and Three

In her second and third issues, Mother contends that the award of the child-support credit to Father "was statutory discrimination prohibited by the equal protection guarantees of Section 3, Article I of the Texas Constitution and of the Fourteenth Amendment to the United States Constitution" and "violates the object of Title II and the comprehensive federal insurance statutory scheme for the benefit of indigent children and should be reversed based on federal preemption." Mother also contends that the trial court implicitly overruled her claims she raises on appeal alleging violations of equal protection and federal preemption because of the context of the dispute and that a liberal reading of Mother's motion for new trial included such claims even though not

specifically "set out." However, in the trial court, Mother did not lodge an objection or assert a violation on the grounds of which she now complains. Neither the reporter's record, nor the trial brief submitted to the trial court by Mother, nor Mother's motion for new trial contains such objections or assertions. "As a rule, a claim, including a constitutional claim, must have been asserted in the trial court in order to be raised on appeal." *Dreyer v. Greene*, 871 S.W.2d 697, 698 (Tex. 1993); *see* TEX. R. APP. P. 33.1(a).

Mother contends the trial court refused to hear her "legal and factual objections and arguments opposing the proposed $460.00 monthly child support credit . . . ." Mother references the emphasized portion of the following exchange in support of her contention:

> [FATHER'S ATTORNEY]: Yes. From that obligation, it should be subtracted, the $460 that the child receives, which will be paid to [Mother] once, you know, there is a signed order and she takes it to Social Security. So, essentially, his child support court-ordered obligation would be $21.82.
>
> THE COURT: [Mother's attorney]?
>
> [MOTHER'S ATTORNEY]: That money belongs to the child, Your Honor. They don't get to reduce his child support with that money. Child support --
>
> THE COURT: Well, there is money -- there is money that goes for the child, isn't it?
>
> [MOTHER'S ATTORNEY]: That's money that belongs to the child that Social Security provides.
>
> THE COURT: Okay.
>
> [MOTHER'S ATTORNEY]: The *Sullivan* case that we cited dealt with --

THE COURT: Yes. Yeah. Quit citing cases to me. I don't have the case in front of me. You keep telling me you're citing cases.

[MOTHER'S ATTORNEY]: It's attached to the brief.

**THE COURT: I'm trying to get the facts straight. Okay? I don't need to argue the law with you.**

[MOTHER'S ATTORNEY]: Then I state that the fact is that the check follows to the custodian who has the child, and it belongs to the child, and that's not [Father's] benefits. That's benefits for the child. He's not paying anything out of his benefits.

THE COURT: Okay. So the child receives the check for $464 [sic], and that's been going to the dad?

[MOTHER'S ATTORNEY]: It's been going to the dad --

[FATHER'S ATTORNEY]: That's correct, Your Honor.

[MOTHER'S ATTORNEY]: -- as custodian for the benefit of the child. When the child's residence is changed, it goes to [Mother] as custodian for the benefit of the child. That's where they got this "payee" reference --

THE COURT: Okay. I'm asking you a yes or no question.

[FATHER'S ATTORNEY]: That's correct, Your Honor.

THE COURT: The child receives a check for $464 [sic], and that check is going to the dad?

[Emphasis added.] After the above exchange, Mother's attorney continued to actively participate in the hearing but never made an objection or argument consistent with Mother's current complaints in issues two and three. Before the conclusion of the hearing, the trial court asked, "Anything else?" Mother's attorney replied, "That's it," without using the opportunity to assert objections or to raise the currently complained-of issues. Mother cannot complain about the trial court's method of conducting the

hearing for the first time on appeal. *See City of San Antonio v. Schautteet*, 706 S.W.2d 103, 104 (Tex. 1986) (issue of open courts violation raised for first time on appeal should not be considered by court of appeals); *McCain v. NME Hosps., Inc.*, 856 S.W.2d 751, 755 (Tex. App.—Dallas 1993, no writ).

For these reasons, we conclude that Mother has not preserved her complaints in issues two and three for appellate review. We overrule Mother's second and third issues.

### Issue Four

In her fourth issue, Mother contends that this case should be remanded to the trial court for an award of reasonable and necessary attorney's fees. Mother argues that if her efforts in the trial court and on appeal to protect M.J.C.'s right to receive the full benefits of Title II without a reduction of the amount of child support, an award of reasonable and necessary attorney's fees would be equitable and just. Having overruled Mother's first three issues on appeal seeking reversal of the offset provided for in section 154.132, we overrule her fourth issue.

### Conclusion

We affirm the order of the trial court.

MATT JOHNSON
Justice

Before Chief Justice Gray,
    Justice Johnson, and
    Justice Smith
Affirmed
Opinion delivered and filed June 13, 2024
[CV06]

