Joyce LOUDNER, Ambrose McBride, Chauncey Long Crow, Della Lytle, Hilda Long Crow, Lisa Redwing, Horace Gilbert Slow, Darlene Fallis Jones, Lyle Medicine Crow, Ramona Estes, Fay Jandreau, Norman V. Taylor, and Kathryn Ratliff, Plaintiffs,

and

The Sisseton–Wahpeton Sioux Tribe; Spirit Lake Tribe; and the Sisseton–Wahpeton Sioux Council of the Assiniboine & Sioux Tribes, Intervenors–Plaintiffs,

v.

UNITED STATES of America, and Gale Norton, individually and in her capacity as Secretary of the Interior, Defendants.

No. CIV. 94–4294.

United States District Court,
D. South Dakota,
Southern Division.

Sept. 28, 2001.

Michael Charles Abourezk, Abourezk Law Offices, Rapid City, SD, Charles Rick Johnson, Stephanie E. Pochop, Johnson, Eklund, Nicholson & Peterson, Gregory, for Plaintiffs.

Jan L. Holmgren, Assistant United States Attorney, U.S. Attorney's Office, Sioux Falls, SD, for Defendants.

James E. McMahon, Boyce, Murphy, McDowell & Greenfield, Sioux Falls, Bertram E. Hirsch, Great Neck, NY, for Intervenor–Plaintiffs.

## MEMORANDUM OPINION AND ORDER

PIERSOL, Chief Judge.

The Sisseton–Wahpeton Sioux Tribe, the Spirit Lake Tribe and the Sisseton–Wahpeton Sioux Council of the Assiniboine and Sioux Tribes ("the Tribes"), intervenors-plaintiffs, filed a motion for summary judgment on the complaint in intervention (Doc. 157) and a motion for enlargement of the scope of intervention (Doc. 190). Plaintiffs and defendants also filed motions for summary judgment on the Tribes' complaint in intervention. (Docs. 169 and 178). The motions will be decided based upon the written record in this action. The Tribes' motions will be denied and the plaintiffs' and defendants' motions for summary judgment will be granted. The Tribes' complaint in intervention, Doc. 144, will be dismissed with prejudice.

## I. BACKGROUND

The Tribes were allowed to intervene in this action "for the sole purpose of challenging the lawfulness of the Secretary of the Interior's manner and method of verifying ancestry under 25 U.S.C. § 1300d–26(c)." (Order Granting Motion to Intervene, Doc. 143, November 8, 2000.) This statute reallocates a portion of the Judgment Fund at issue in this lawsuit from lineal descendants to the Tribes.[1] The total number of lineal descendants certified by the Secretary to be entitled to share in the Judgment Fund is directly related to the percentage of the Judgment Fund the Tribes may receive under the Mississippi Sioux Tribes Judgment Fund Distribution Act of 1998, P.L. 105–387, 112 Stat. 3471 (codified at 25 U.S.C. § 1300d–21 et seq.) ("the 1998 Act").

The Tribes contend that 25 U.S.C. § 1300d–26(c) (2001) restricts post-January 1, 1998 enrollment to individuals who can trace their ancestry to a specific Sisseton or Wahpeton Mississippi Sioux Tribe ancestor who was alive in 1862 or earlier. They seek an injunction requiring the Secretary of the Interior to certify, pursuant to 25 U.S.C. § 1300d–26(c), only those applicants who trace ancestry to a specific Sisseton or Wahpeton Mississippi Sioux Tribe lineal ancestor (a) whose name appears on one or more of the rolls identified in that statutory section, (b) who was alive in 1862 or earlier, and (c) was a member of the Sisseton or Wahpeton Mississippi

---

1. A complete description of the Judgment Fund at issue in this lawsuit is contained in the Court's Memorandum Opinion and Order, Doc. 58, dated December 19, 1997.

Sioux Tribe. (Complaint in Intervention, Doc. 144.)

Plaintiffs contend that 25 U.S.C. § 1300d–26(c) unambiguously clarifies which rolls the Secretary is to use in certifying individuals to share in the Judgment Fund and that resort to the legislative history to interpret the statute is unnecessary. Moreover, plaintiffs claim that the Tribes' failure to participate in the Secretary's rule-making process for the implementation of 25 U.S.C. § 1300d–26(c) precludes the Tribes from challenging the Secretary's use of the rolls listed in that statute to determine eligibility to share in the Judgment Fund.

Defendants claim the statute is unambiguous and that there was no substantive change in the statutory language for determining eligibility except for the listing of specific rolls in 25 U.S.C. § 1300d–26(c). If the statutory language is plain, defendants contend, the Court may look to the legislative history only to determine if there is a clearly expressed legislative intent contrary to the plain language of the statute. The legislative history is not conclusive enough, argue the defendants, to rebut the clear language of 25 U.S.C. § 1300d–26(c). Moreover, the defendants contend, an agency's interpretation of a statute it administers is entitled to deference unless it is inconsistent with the statute's plain language or it is an unreasonable interpretation of an ambiguous statute.

## II.  DECISION

Summary judgment is appropriate if the moving party establishes that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In reviewing a motion for summary judgment, this Court views the evidence in a light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). "Once the motion for summary judgment is made and supported, it places an affirmative burden on the non-moving party to go beyond the pleadings and 'by affidavit or otherwise' designate 'specific facts showing that there is a genuine issue for trial.'" *Commercial Union Ins. Co. v. Schmidt*, 967 F.2d 270, 271 (8th Cir.1992) (quoting Fed.R.Civ.P. 56(e)). The material facts regarding the Tribes' complaint in intervention are not in dispute. The claims in the Tribes' complaint in intervention involve statutory interpretation properly resolved on a motion for summary judgment.

The statute at issue in this action provides:

**(c)  Verification of ancestry**

In seeking to verify the Sisseton and Wahpeton Mississippi Sioux Tribe ancestry of any person applying for enrollment on the roll of lineal descendants after January 1, 1998, the Secretary shall certify that each individual enrolled as a lineal descendant can trace ancestry to a specific Sisseton or Wahpeton Mississippi Sioux Tribe lineal ancestor who was listed on -

(1) the 1909 Sisseton and Wahpeton annuity roll;

(2) the list of Sisseton and Wahpeton Sioux prisoners convicted for participating in the outbreak referred to as the "1862 Minnesota Outbreak";

(3) the list of Sioux scouts, soldiers, and heirs identified as Sisseton and Wahpeton Sioux on the roll prepared pursuant to the Act of March 3, 1891 (26 Stat. 989 et seq., chapter 543); or

(4) any other Sisseton or Wahpeton payment or census roll that preceded

a roll referred to in paragraph (1), (2), or (3).

25 U.S.C. § 1300d–26(c). This statute restricts the Secretary's discretion in determining which records and rolls it may use to determine eligibility to share in the Judgment Fund. Prior to the 1998 Act, the Secretary possessed exclusive discretion to determine which records and rolls would be used to verify ancestry in preparing the roll of lineal descendants eligible to share in the Judgment Fund. *See* 25 U.S.C. § 1300d–3(b) (1983), *amended by* 25 U.S.C. § 1300d–3(b) (2001) (directing the Secretary to prepare a roll of lineal descendants "who were born on or prior to and are living on October 25, 1972, whose names or name of a lineal ancestor appears on any available records and rolls acceptable to the Secretary . . . ."); *Sisseton–Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 354 (9th Cir.1996) (recognizing the Secretary's discretion). The 1998 Act restricted the Secretary's discretion by providing that the preparation of the roll required by 25 U.S.C. § 1300d–3(b) is "[s]ubject to the Mississippi Sioux Tribes Judgment Fund Distribution Act of 1998." 25 U.S.C. § 1300d–3(b) (2001).

▮▮▮ The Eighth Circuit directs that "[t]he plain language of a statute is the starting point in every case involving statutory construction." *Adams v. Apfel*, 149 F.3d 844, 846 (8th Cir.1998). "If the statute is clear and unambiguous, judicial inquiry is complete." *Id.* "A statute is clear and unambiguous when 'it is not possible to construe it in more than one reasonable manner.'" *Id.* (quoting *Breedlove v. Earthgrains Baking Cos.*, 140 F.3d 797, 799 (8th Cir.), *cert. denied*, 525 U.S. 921, 119 S.Ct. 276, 142 L.Ed.2d 228 (1998)). If a statute is unambiguous, its legislative history is not consulted unless exceptional circumstances dictate otherwise:

"Legislative history can be a legitimate guide to a statutory purpose obscured by ambiguity, but '[i]n the absence of a "clearly expressed legislative intention to the contrary," the language of the statute itself "must ordinarily be regarded as conclusive.'" Unless exceptional circumstances dictate otherwise, '[w]hen we find the terms of a statute unambiguous, judicial inquiry is complete.'"

*In re Erickson Partnership*, 856 F.2d 1068, 1070 (8th Cir.1988) (quoting *Burlington Northern R.R. Co. v. Oklahoma Tax Comm'n*, 481 U.S. 454, 461, 107 S.Ct. 1855, 95 L.Ed.2d 404 (1987) (citations omitted)). The Eighth Circuit further recognized that "[t]he mere fact that statutory provisions conflict with language in the legislative history is not an exceptional circumstance permitting a court to apply the legislative history rather than the statute." *In re Erickson Partnership*, 856 F.2d at 1070.

▮▮▮ The Tribes contend that the statute is ambiguous because they understand the phrase "trace ancestry to a specific Sisseton or Wahpeton Mississippi Sioux Tribe lineal ancestor," 25 U.S.C. § 1300d–26(c), to mean lineal descendants must trace ancestry to an ancestor *alive* in 1862 or earlier. This contention is not supported by the plain language of the statute. The statute directs the Secretary to verify that an applicant has traced ancestry to a lineal ancestor "who was listed on [specific rolls]." The statute does not direct the Secretary to verify that an applicant has traced ancestry to an ancestor *alive* in 1862 or earlier. The statute is not ambiguous simply because the Tribes lobbied Congress to require tracing ancestry to an ancestor alive in 1862 or because the Tribes understood the statute to impose that requirement. The only reasonable interpretation of the 1998 Act's plain language is that the Secretary must certify that lineal descendants can trace ancestry

to a Sisseton or Wahpeton Mississippi Sioux Tribe lineal ancestor listed on the rolls specified in 25 U.S.C. § 1300d–26(c)(1–4). The statute is clear and unambiguous and the language of the statute is conclusive. Exceptional circumstances do not exist to dictate that the legislative history must be consulted in construing 25 U.S.C. § 1300d–26(c). *See In re Erickson Partnership*, 856 F.2d at 1070.

■ Even if the Court found exceptional circumstances or that the 1998 Act is ambiguous regarding the verification of ancestry of lineal descendants, the legislative history does not clearly express a legislative intention contrary to the plain language of the statute. *See id.* The Tribes cite to various statements by supporters of the 1998 Act to advance their argument that lineal descendants must trace ancestry to an ancestor alive in 1862 or earlier. The Supreme Court, however, has "repeatedly stated that the authoritative source for finding the Legislature's intent lies in the Committee Reports on the bill, which 'represent the considered and collective understanding of those Congressmen involved in drafting and studying proposed legislation.'" *Garcia v. United States*, 469 U.S. 70, 76, 105 S.Ct. 479, 83 L.Ed.2d 472 (1984); *see In re Walton*, 866 F.2d 981, 983 (8th Cir.1989) (recognizing that " '[t]o the extent that legislative history may be considered, it is the official committee reports that provide the authoritative expression of legislative intent,' not the 'stray comments by individual legislators' on the floors of the House and Senate.").

The official committee report on the bill at issue contains a specific section commenting on the requirements to prove ancestry:

> Proof of ancestry. -As noted, the bill does not require the Interior Department to revisit the list of persons already certified as lineal descendants pri-

or to January 1, 1998. The Committee is concerned with the Department of the Interior's approach to enrollment. As the Ninth Circuit noted, the dispersal of the aboriginal tribe presents a difficulty in identifying those who are entitled to enrollment. Although the Committee does not take issue with the 9th Circuit's finding that the 1972 Act left considerable discretion to the Secretary, there are competing explanations for why the 1972 Act sought to be inclusive with respect to the rolls and other materials that may be employed to prove ancestry. The Secretary appears to believe that Congress sought to be inclusive to ensure inclusion of all lineal descendants, even at the cost of enrolling a number of individuals who are not, in fact, descendants of a member of the aboriginal tribe. An alternative interpretation is that inclusiveness with respect to rolls was intended to allow individuals to prove their ancestry using any document (i.e. roll) that would allow them to trace their ancestry to a source indicating that they have a lineal ancestor who was a member of the Sisseton and Wahpeton Sioux tribe. The approach finally incorporated into the bill seeks to eliminate ambiguity, by indicating which rolls the Secretary may use.

S.Rep. No. 105–379, at 9–10 (1998). Despite the Tribes' lobbying efforts, this Committee Report does not establish a Congressional intention to require lineal descendants to trace ancestry to an ancestor alive in 1862 or earlier. The legislative history of the 1998 Act does not support the Tribes' arguments and summary judgment will be entered in favor of plaintiffs and defendants on the Tribes' complaint in intervention. Pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, the Court finds that there is no just reason for delay and will enter judgment on the com-

plaint in intervention in accordance with this written opinion.

The Tribes filed a motion for enlargement of the scope of intervention. The purpose of the motion is to allow the Tribes to participate in this action in the event that plaintiffs are permitted to litigate a constitutional challenge to the 1998 Act based on the claims asserted by the plaintiffs in *LeBeau v. United States,* CIV 99–4106 (D.S.D.). This motion will be denied without prejudice because the Court has already stated that the constitutionality of the 1998 Act will be decided in the *LeBeau* action. (Order on Motions, Doc. 148, December 15, 2000.) The Tribes' motion is denied without prejudice to their right to seek intervention if the plaintiffs in this action are allowed at some future date to litigate a constitutional challenge to the 1998 Act.

## III. CONCLUSION

The Tribes' motion for summary judgment will be denied. Section 1300d–26(c) of Title 25 clearly and unambiguously allows the Secretary to certify the ancestry of lineal descendants applying to share in the Judgment Fund by tracing ancestry to a specific Sisseton or Wahpeton Mississippi Sioux Tribe lineal ancestor who is listed on any of the rolls specified in that section. The legislative history of the 1998 Act supports this conclusion. Plaintiffs' and defendants' motions for summary judgment will be granted and the Tribes' complaint in intervention will be dismissed. Accordingly,

IT IS ORDERED:

1. That intervenors-plaintiffs' Motion for Summary Judgment, Doc. 157, is denied.

2. The plaintiffs' Motion for Summary Judgment, Doc. 169, is granted.

3. That defendants' Motion for Summary Judgment, Doc. 178, is granted.

4. That, finding no just reason for delay pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, final judgment will be entered in favor of plaintiffs and defendants on intervenors-plaintiffs' Complaint in Intervention, Doc. 144.

5. That intervenors-plaintiffs' Motion for Enlargement of the Scope of Intervention, Doc. 189, is denied without prejudice.

6. That the caption shall be amended in all future documents filed in this action to delete the intervenors-plaintiffs as parties.

## JUDGMENT ON COMPLAINT IN INTERVENTION

In accordance with the Memorandum Opinion and Order filed this date with·the Clerk,

IT IS ORDERED, ADJUDGED, and DECREED that Judgment, with prejudice, is entered in favor of plaintiffs and defendants on intervenors-plaintiffs' Complaint in Intervention.